It seems that
where a wri-
ting is pro-
duced by one
party, on no-
tice from the
other, and af-
ter being
read is filed
with the
clerk, and a
new trial be-
ing awarded,
the paper is
afterwards
improperly
taken from
the custody

## Smith vs. Morrow.

Appeal from the Fleming Circuit; WM. P. ROPER, JUDGE.

*Practice. Notice to produce. Writings and proof of
their contents. Evidence. Boundaries. Surveys.
Possession. Leases.*

Judge OWSLEY delivered the Opinion of the Court.

MORROW sued out from a justice of
the peace a warrant against Hardage Smith, for a
forcible entry and detainer, and such proceedings
were thereon had as that Smith was found guilty by
the inquest of the jury. The finding of the jury
was traversed by Smith, and the cause brought to
the circuit court. Issue was taken to the traverse
by Morrow, and on trial in the *circuit court*, ver-
dict and judgment *rendered against Smith*.

The case was then brought by Smith to this court,
and the judgement was reversed and the cause re-
manded for further proceedings. The report of
the case in this court is contained in 5th Lit. Rep.
210.

Upon the return of the case to the circuit court,
another trial was there had, and verdict and judg-
ment again recovered by Morrow. From that
judgment Smith has appealed.

The questions made by the assignment of error
grow out of exceptions taken to the opinion of the
court at the last trial.

It appears that at the first trial a written agree-
ment between Weathers Smith, (under whom Har-
dage Smith claims the land in contest,) and Morrow
was, upon notice given to him by Smith for that
purpose, produced as evidence by Morrow, and after
being used before the jury, was again handed to Mor-
row, and that some days before the last trial, notice
was again given by Smith to Morrow, for the latter
again to produce the writing at the trial, but on the
trial when called on to produce the writing, Mor-
row refused to do so, at the same time neither ad-
mitting or denying the writing to be in his posses-
sion; whereupon the counsel of Smith moved the
court for a rule to compel Morrow to produce the
writing, but the court refused to make any rule up-

on the subject, and informed the counsel of Smith that he was at liberty to prove the contents of the writing by parol evidence, which was done accordingly.

*of the clerk, the court may compel its production.*

The propriety of the refusal of the court to make the rule upon Morrow to produce the writing, is the first point to which the attention of this court will be directed. If, after the writing had been produced on the first trial, it had been filed with the clerk among the papers of the cause, and not withdrawn by Morrow until the last trial, there would certainly be much stronger reason for the rule which was applied for by the counsel of Smith. The obtaining the possession of the writing under such circumstances, and refusing to produce it for the inspection of the jury, might, with at least great plausibility, be contended to be a fraud upon the law and justice of the court, and would demand of the court an exertion of all legitimate authority to elude the effects of such a fraudulent attempt.

*But where, after the paper had been used in such case, the party who produced it takes it back without its being committed to the custody of the clerk, he cannot be compelled to reproduce it.*

But instead of being lodged with the clerk, the writing, after being used on the first trial, was retained by Morrow; and instead of its being proved that he had the writing with him, there is no evidence conducing to shew that Morrow ever had such a paper, except what relates to his possession at the previous trial; so that there is nothing in the cause going to fix fraud on Morrow in refusing to produce the writing, nor any thing to distinguish this case from the common case of a party having the possession of a paper which his adversary conceives would be useful to him as evidence. In such a case it is no doubt proper that notice should be given to the party in possession of the paper to produce it; not however, as seems to have been supposed by the counsel of Smith in the court below, to enable the party desiring the paper, through the instrumentality of the court, to compel the other party to produce it, but to enable him, in case the paper is not produced, to use secondary or inferior evidence as to the contents of the writing. The best evidence in the power of the party must always be produced, and as written evidence in legal contemplation is superior to that of parol testimony, it

SMITH
vs.
MORROW.

No party to the action can be compelled by a court of law to produce his papers to be given in evidence against himself.

But if he decline after due notice, the contents may be proved.

Declaration of the occupant made at the time of his settlement, of under whom and how he took the possession, are part of the res gesta, and competent to prove the manner and extent of the possession.

is incumbent on the party, before he can use parol testimony to prove the contents of a writing, to use all legal means to obtain the writing, and if it be in the possession of his adversary to notify him to produce it. But it is incompatible with the most firmly settled principle of the common law, to compel a party at law to give evidence against himself, which would undoubtedly be the case were the court to compel either party, at the instance of the other, to produce a paper which he might think would go to his prejudice.

It was not therefore incorrect in the court to refuse the rule moved by the counsel of Smith, and to leave him to prove the contents of the writing by secondary evidence.

It was proved that Morrow settled on the tract of land, where he resided at the time of issuing the warrant by the justice, in 1794, and for the purpose of proving under whose title the settlement was made, a witness was asked by the counsel of Morrow, as to what were Morrow's declarations as to the person under whom he settled, at the time of his settling upon the land; but the question was objected to by the counsel of Smith, and the objection overruled, and the question answered. The next point to be noticed is, was the court correct in permitting the witness to answer the question propounded?

The decision of the court, in suffering the question to be answered by the witness, is so obviously correct, that we have thought it scarcely necessary to bestow any remarks upon it. The intention with which the settlement was made by Morrow, so unites and connects itself with the act of settlement, and has such an important influence upon the extent of the possession which was acquired by that settlement, that argument must surely be useless to prove the propriety in a contest like the present, involving the extent of possession of a witness, whilst speaking as to the fact of settlement, also stating what the declarations of Morrow were in relation to the claim under which he settled at the time of his making the settlement. The declara-

tions which were then made as to the claim under which Morrow settled, are of themselves facts which connect themselves to, and form a part of, the fact of settlement and possession by Morrow; and as part of the *res gesta,* were doubtless properly allowed to be detailed in evidence to the jury.

SMITH
'vs.
MORROW.

The land in contest is claimed by the parties under adverse interfering patents from the commonwealth; those under which Smith claims are two in number, one in the name of Weathers Smith for four hundred eighty-seven and a half acres, dated the 10th of May 1785, and the other in the name of Charles Morehead for two hundred and three acres, also dated the 10th of May 1785; and Morrow claims under a patent to Wm. Trimble for seven hundred and fifty acres, dated the 18th of May 1800. One great object with Morrow on the trial in the circuit court, was to prove that by his entry, settlement and improvement of the land, he acquired the possession of all the land included within the boundary of Trimble's patent, and which is also contained in the patents of Smith and Morehead under which Smith claims; and that the possession so acquired continued in him until the entry was made by Smith, which is complained of in the writ of forcible entry and detainer, sued out from the justice of the peace in this case. To that object the evidence of both parties was directed on the trial, Morrow endeavoring to establish the possession of the land in contest at the date of the entry to be in him, and Smith endeavoring to repel the fact, and prove that some years prior to the time of the forcible entry alleged in the warrant, the possession of the land was in him, under the elder patents of Smith and Morehead, and that he has retained the possession ever since.

Controversy on the fact of possession.

To maintain the position contended for by him, Morrow proved that as early as 1794, he settled upon the land contained in Trimble's patent, claiming under that patent, and that he has continued to reside thereon and extend his improvements ever since; and although his settlement was not originally made within the boundary of either of the patents under which Smith claims, he proved that as

Morrow's evidence of possession.

early as 1798, and before any possession was taken
under the patents of Smith or Morehead, he extend-
ed his improvements within the boundaries of those
patents; at the same time claiming to hold under
Trimble.  It was also proved that before he settled
upon the land, Morrow married the daughter of
the patentee Trimble, and that the settlement was
made under a promise of the patentee to give him
two hundred acres of the land; but there was no
evidence introduced conducing to prove that any
precise boundary for the two hundred acres, was a-
greed on between Morrow and the patentee before
the settlement; though it is to be inferred from the
fact of Morrow having as early as 1798, extended
his improvements within the patent boundaries of
Smith and Morehead, and other acts of ownership
which he is proved to have extended over the land,
that Morrow understood he was to have, and expect-
ed to receive from the patentee, Trimble, a convey-
ance for the land in contest.   There was no certified
copy from the books of the surveyor, of the survey
originally made for Trimble, introduced as evidence;
but the patent of Trimble was used in evidence and
that recites the survey to have been made for Trim-
ble as early as July 1785; and it was satisfactorily
proved that the boundary of the survey so recited
in the patent, includes the land in contest.   It was
also proved, that in 1802 the patentee, Trimble,
conveyed the land in contest, together with other
land, to Morrow and R. Trimble, and that R. Trim-
ble has since conveyed his interest to Morrow.

After the evidence was through, the following in-
structions to the jury were moved by the counsel of
Smith, but refused by the court, to-wit: "If Mor-
row, when he originally entered upon the claim of
Trimble, had no metes and bounds or quantity of
land assigned him, upon which he could make law-
ful entry, that his possession acquired is circum-
scribed to his actual close, until he received with R.
Trimble a deed of conveyance from Wm. Trimble,
the patentee in 1802."

The next question therefore is, ought the instruc-
tions moved to have been given?

We think not.   There would have been great

propriety in circumscribing the possession of Morrow to his actual close, provided, that whilst that possession continued, the claim of Trimble, under which it was held, had no prescribed and ascertained boundary; for, as the settlement of Morrow was made, and his improvements extended, under the claim of Trimble, it would be difficult, and indeed impracticable, to extend the possession thereby acquired beyond Morrow's actual close, if there was no boundary to the claim of Trimble by which the possession could be circumscribed and limited. But it is apparent from the patent of Trimble, that his claim had been actually surveyed long before Morrow entered and settled upon the land; and as that entry and settlement was made under the claim of Trimble, though under a promise to give his son-in-law two hundred acres, the boundary of which was not defined, it is most reasonable to presume that by entering and settling upon the land, it was intended by Morrow to take the possession of the entire tract, as fully as could have been done by Trimble, if the settlement had been made by him. It is not designed to say, that if the settlement had been made by Trimble, he would thereby have gained the possession of his entire survey.

The settlement was not upon the land contained in either of the elder patents, which had then issued, and under which Smith now claims; and we should not by construction extend a possession lawfully taken, outside of the elder grants of others, so as to encroach upon and conflict with their legal right under those grants. But whilst it is conceded that the original settlement might not be construed to give a possession within the elder patents of Smith and Morehead, it is perfectly clear, that so soon as the improvements were extended within the boundary of those patents, a possession was acquired within those patents, not limited by the actual close or improvements, but extending to the limits of the boundary of Trimble's survey, under which the settlement and improvements were made.

It results, therefore, that in refusing the instructions moved, the court did not err.

The next question relates to a decision of the court

*(margin, right column:)*

Smith
vs.
Morrow.

Settlement of the son-in-law of the former patentee within the interference between his patent and an elder grant unoccupied, under a promise of a gift of a certain number of acres, but not demarked, gives the possession to the extent of the former patent.

If the original settlement were outside the elder patent, and afterwards the improvements extended within the elder patent, the possession of the interference commenced with that extension of the improvements within the elder grant.

Evidence

SMITH
vs.
MORROW.

that one of
the parties
had failed to
list the land
in contest for
taxation, is
not compe-
tent to prove
he had sur-
rendered and
not held the
possession.

in rejecting, as incompetent evidence, copies of va-
rious extracts, certified by the clerks of the county
courts of the counties in which Morrow resided, to
be true copies from the books of the commissioners
of the tax in various successive years. It was con-
tended on the trial in the circuit court, and attempt-
ed to be proved by Smith, that as early as 1808 the
possession of the land in contest was surrendered up
to him by Morrow; and as evidence conducing to
support that position, the rejected copies of extracts
from the books of the commissioners of the tax for
the year 1803, and the successive years down to
1821, were offered to be read to the jury by him.

We are unable to discern the rule of evidence
which can have been violated by the exclusion of
those copies of extracts from the jury. From those
copies, it would seem that Morrow has failed to en-
ter for taxation the land in contest; and if in truth
such has been his conduct, he may have been remiss
in the discharge of his duty to the government, but
the connexion between an omission to list the land
for taxation and the fact assumed by Smith, that the
possession of the land was surrendered to him by
Morrow, is not perceived, so as from the fact of omit-
ting to list the land, to infer the fact of a surrender
of the possession. The motives for omitting to list
land for taxation may be so various, that from the
fact of omission, no unfavorable inference against
a continuance of the possession can with propriety
be drawn. Whether there be or be not a possession
in fact of land, depends not upon a faithful per-
formance of his duties to government by the person
claiming to be possessed. Government may fail to
receive her taxes for land, and the possession thereof
nevertheless retained by the delinquent; and in con-
troversies about the possession, such as the present, to
allow the claims of government or the delinquency
of either party to the government to be drawn in
question, would in its consequences, instead of cast-
ing any light upon the matter in issue, tend to em-
barrass and perplex the deliberations of the jury, by
drawing their attention to irrelevant and imperti-
nent subjects.

The remaining point made, by the assignment of

errors, relates to the refusal of the court to award a new trial, on the motion of Smith.

That decision involved no question of law that was not decided by this court when this cause was formerly here, and we would again refer to that opinion for a full exposition of every legal question which relates to the merits of the contest. With respect to the facts involved in the application for a new trial, we would barely remark, that they were left with the jury, whose province it is to weigh the evidence and decide the facts; and we cannot say, that in coming to the conclusion it did, the jury has transcended its province, and found a verdict which should have been set aside on the ground of its being against evidence.

The judgment must be affirmed, with cost.

*Talbot* and *Reid* for appellant; *Crittenden* for appellee.